IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD CARDONA,              )<br>                                                    )<br>          Petitioner,           )<br>                                                    )<br>     vs.                                     )<br>                                                    )<br>A. P. KANE, Warden,            )<br>                                                    )<br>          Respondent.          )<br>_____ ) | No. C 06-3845 CRB (PR)<br><br>ORDER DENYING<br>PETITION FOR A WRIT OF<br>HABEAS CORPUS |

      Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") May 11, 2005 decision to deny him parole.

      Per order filed on November 13, 2006, the court found that petitioner's claim that the BPT's decision finding him not suitable for parole does not comport with due process appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**BACKGROUND**

On February 4, 1986, petitioner pled guilty to second degree murder in Orange County superior court and was sentenced to an indeterminate term of 15 years to life in state prison.

Petitioner has been found not suitable for parole each time he has appeared before the BPT. On May 11, 2005, petitioner appeared before the BPT for a subsequent parole consideration hearing. The BPT again found him not suitable for parole and denied him a subsequent hearing for one year.

Petitioner challenged the BPT's May 11, 2005 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his petition for review on April 19, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.    Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's May 11, 2005 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due process.  Petitioner claims that the BPT's decision is not supported by some evidence in the record and is improperly based on the unchanging facts of his commitment offense and pre-commitment conduct.  Petitioner also claims that the BPT violated his plea agreement by depriving him of the reduced punishment he bargained for when he entered a guilty plea to the charged offense.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of

incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion,

4

306 F.3d at 904.  Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board."  Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPT panel afforded petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.

The panel concluded that petitioner "is not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." May 11, 2005 Hr'g Tr. at 73 (Resp't Ex. C).  The panel explained that it found that the offense was carried out in "an extremely callous manner" because it involved "multiple victims," the "victim was abused by being hit and then stabbed multiple times," and the motive – unprovoked gang warfare – was "extremely trivial." Id. at 79-80.  Petitioner and fellow gang members pulled up alongside a car driven by members of a rival street gang, jumped out of their truck and began hitting the rival gang's car.  Petitioner opened the car door and pulled out victim Ray Ramirez, who was then stabbed to death by another gang member.  The panel also found that petitioner had "an escalating pattern of criminal conduct from the age of 14 until the time of [the] commitment offense" characterized by gang activity. Id. at 80.  Petitioner's prior juvenile criminal history included burglary, possession of a combat knife, violation of a court order not to associate with gang members, and being in a car with loaded rifles and a

loaded shotgun.  Petitioner had been on probation and juvenile hall, but failed to profit from society's previous attempts to correct his criminality.

The panel noted that petitioner had not "sufficiently participated in beneficial self-help programs." Id. at 81.  He was unable to say much about the NA and AA programs in which he had participated and conceded that he spent most of his spare time playing sports and assembling model cars.  "It looks immature," one of the panel members remarked. Id. at 76.  The panel also noted that petitioner's parole plans need to be more specific:  "[Y]our parole plans need to be just a little bit more solid with specifics as to who all lives in the home and exactly what the situation is.  And the fact that I said if they rent, are you going to be allowed to live there." Id. at 82.

The panel commended petitioner for staying disciplinary-free for a long period of time and getting his high school diploma.  It also noted that his psychological evaluation was supportive; however, "these positive aspects of your behavior do not outweigh your factors of unavailability." Id. at 82-83.  The panel told petitioner that he was very close to getting a parole date and recommended that he "get into another vocation" and "participate in whatever self-help is available." Id. at 83.

The state superior court upheld the decision of the BPT and the state appellate and supreme courts summarily affirmed.  The superior court reviewed the evidence relied on by the panel and determined that its decision was supported by some evidence:

> If the BPT determines consideration of the public safety requires more incarceration, it may deny parole as long as its decision is supported by any evidence.  (In re Dannenberg (2005) 34 Cal. 4th 1061, 1071.)  Here the BPT made its finding based on the gang-related, violent, callous nature of the crime.  It also noted that Petitioner's behavior in prison, while exemplary in some respects, was not "aggressive" vis-à-vis self-help.  The BPT also mentioned Petitioner's social and criminal history which supported

> its decision. In light of Dannenberg's holding, the petition must be denied.

In re Richard Cardona, No. M-10743, slip op. at 2 (Cal. Super. Ct. Dec. 15, 2005) (Resp't Ex. D).

The state court's rejection of petitioner's due process claim was not contrary to, or an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The BPT's May 11, 2005 decision to deny petitioner parole is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is – the victim was stabbed multiple times, which under California law suffices to show that the crime was conducted in a cruel manner; petitioner has a pre-commitment record of escalating criminal activity characterized by gang activity since he was 14 years old; petitioner participated in few self-help programs and had not upgraded vocationally in many years; and petitioner's parole plans were not entirely clear. Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). It is not up to this court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Petitioner argues that the BPT's continued reliance on the immutable circumstances of his murder offense and pre-commitment conduct conflicts with

7

the Ninth Circuit's ruling in Biggs.[1] The argument is without merit because the BPT panel's denial of parole was not based solely on petitioner's commitment offense and conduct prior to incarceration. Other evidence in the record (e.g., insufficient self-help and vocational programming, and a lack of firm parole plans) constitutes some evidence under Hill. See Hill, 474 U.S. at 455-56 (inquiry under Hill is simply whether there is any evidence in the record that could support the conclusion reached by the BPT).

Petitioner also claims that the BPT violated his plea agreement by depriving him of the reduced punishment he bargained for when he entered a guilty plea to the charged offense. The claim is without merit.

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). A plea agreement containing a specific promise, such as when the defendant will be paroled, is enforceable. See Brown v. Poole, 337 F.3d 1155, 1161 (9th Cir. 2003) (that state prosecutor had no right to offer deal defendant accepted in exchange for waiving her constitutional rights may be a problem for state, but not defendant). But it is petitioner who bears the burden of proving any alleged promise made by the prosecution. See Santobello, 404 U.S. at 261-62. Petitioner makes no such showing. Nor is there any indication in the record that petitioner was promised anything other than life unless he is found suitable for parole by the BPT. The state courts' rejection of petitioner's breach

---

[1] In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation." Biggs, 334 F.3d at 916-17.

1  of plea agreement claim cannot be said to be objective unreasonable. <u>See</u> 28
2  U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 409.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: <u>November 7, 2007</u>

                       CHARLES R. BREYER
                       United States District Judge

G:\PRO-SE\CRB\HC.06\Cardona1.denial.wpd     9